Jonathan Evans (Cal. Bar # 247376)
Omonigho Oiyemhonlan, *law student* (student practice application approved)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Phone: 510-844-7118
Fax: 510-844-7150
Email: jevans@biologicaldiversity.org

*Attorneys for Plaintiffs Center for Biological Diversity and Center for Environmental Health*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and CENTER FOR ENVIRONMENTAL HEALTH,<br><br>Plaintiffs,<br><br>vs.<br><br>ANDREW R. WHEELER, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>Defendant. | Civ. No.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>(Clean Air Act, 42 U.S.C. §§ 7401 *et seq*) |

**INTRODUCTION**

1. This action is brought under the federal Clean Air Act, 42 U.S.C. §§ 7401 – 7671q, and seeks to compel the Administrator of the United States Environmental Protection Agency ("EPA") to carry out his outstanding legal obligations to: (1) promulgate a Federal Implementation Plan ("FIP") addressing the 2006 National Ambient Air Quality Standards ("NAAQS") for particulate matter 2.5 micrometers or less ("$PM_{2.5}$") for the Yolo-Solano Air Quality Management District; (2) take final action either approving or disapproving the contingency measures incorporated in the Portola Fine Particulate Matter ($PM_{2.5}$) Attainment Plan submitted by the state of California for the Portola region of Plumas County; and (3) take final action on 49 individual plan elements submitted by the state of Arizona to implement the 2008 8-hour ozone NAAQS for the Phoenix-Mesa region.

2. Soot and smog air pollution have profound effects on human health. Soot ($PM_{2.5}$) contributes to premature mortality, aggravation of respiratory and cardiovascular disease, decreased lung function, and visibility impairment. EPA has found that short and long-term exposure to smog (ozone) can result in "enhanced respiratory symptoms in asthmatic individuals, school absences, and premature mortality." 73 Fed. Reg. 16,436, 16,440 (Mar. 27, 2008). Individuals particularly sensitive to soot and smog exposure include older adults, people with heart and lung disease, active people, and children. *See* 78 Fed. Reg. 3086, 3088 (Jan. 15, 2013); 62 Fed. Reg. 38,653, 38,668 (July 18, 1997); 73 Fed. Reg. 16,436, 16,440 (Mar. 27, 2008).

3. EPA has also found that plant species are especially sensitive to ozone pollution, which stunts growth, interferes with photosynthesis, and increases susceptibility to disease, weather, and insects. These negative impacts can have a damaging effect on the surrounding ecosystem, including loss of biodiversity, habitat degradation, and water, nutrient, and carbon cycling. Studies have linked long-term ozone exposure to adverse health effects in birds such inflammation, ruptured blood vessels, lung failure, decreases in egg production and hatching, brood abandonment, and reduced growth.

4. Accordingly, Plaintiffs CENTER FOR BIOLOGICAL DIVERSITY and CENTER FOR ENVIRONMENTAL HEALTH bring this action against Defendant ANDREW

R. WHEELER, in his official capacity as Administrator for the United States Environmental Protection Agency, to compel him to perform his mandatory duties to ensure health and public welfare protections promised under the Clean Air Act.

**JURISDICTION**

5. This case is a Clean Air Act "citizen suit." Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a) (Clean Air Act citizen suits).

6. An actual controversy exists between the parties. This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 of 1146, and does not involve the Tariff Act of 1930.

7. Thus, this Court has jurisdiction to order declaratory relief under 28 U.S.C. §§ 2201. If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

**NOTICE**

8. Plaintiffs mailed to EPA by certified mail, return receipt requested, written notice of intent to sue regarding the violations alleged in this Complaint. EPA received the notice letter regarding the claims in the original complaint on or about March 11, 2019. More than sixty days have passed since EPA received this notice letter. EPA has not remedied the violations alleged in this Complaint. Therefore, a present and actual controversy exists between the parties.

**VENUE**

9. Defendant EPA resides in this judicial district. This civil action is brought against an officer of the United States acting his official capacity and a substantial part of the events or omissions giving rise to the claims in this case occurred in the Northern District of California. Each claim in this Complaint concerns EPA's failure to perform mandatory duties with regard to California and Arizona. EPA Region 9, which is responsible for California and Arizona, is headquartered in San Francisco. Thus, events and omissions at issue in this action occurred at EPA's Region 9 headquarters in San Francisco. Additionally, Plaintiff CENTER FOR ENVIRONMENTAL HEALTH is headquartered in Oakland. Accordingly, venue is proper in

this Court pursuant to 28 U.S.C. § 1391(e).

## INTRADISTRICT ASSIGNMENT

10. A substantial part of the events and omissions giving rise to the claims in this case occurred in the County of San Francisco. Accordingly, assignment to the Oakland or San Francisco Division is proper pursuant to Civil L.R. 3-2(c) and (d).

## PARTIES

11. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3) corporation incorporated in California. The Center for Biological Diversity has approximately 69,000 members throughout the United States and the world. The Center for Biological Diversity's mission is to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters, and public health through science, policy, and environmental law. Based on the understanding that the health and vigor of human societies and the integrity and wildness of the natural environmental are closely linked, the Center for Biological Diversity is working to secure a future for animals and plants hovering on the brink of extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us.

12. The Center for Biological Diversity and its members include individuals with varying interests in wildlife species and their habitat including scientific, professional, educational, recreational, aesthetic, moral, and spiritual. Further, the Center for Biological Diversity's member enjoy, on an ongoing basis, the biological, scientific, research, education, conservation, recreational, and aesthetic values of the regions inhabited by these species, including the regions at issue in this action. The Center for Biological Diversity's members observe and study native species and their habitat, and derive professional, scientific, education, recreational, aesthetic, inspirational, and other benefits from these activities and have an interest in preserving the possibility of such activities in the future. The Center for Biological Diversity and its members have participated in efforts to protect and preserve natural areas, including the habitat essential to the continued survival of native species, and to address threats to the continued existence of these species, including the threats posed by air pollution and other contaminants.

13. Plaintiff the CENTER FOR ENVIRONMENTAL HEALTH is an Oakland, California based non-profit organization that helps protect the public from toxic chemicals and promotes business products and practices that are safe for public health and the environment. The Center for Environmental Health works in pursuit of a world in which all people live, work, learn and play in health environments.

14. Plaintiffs' members live, work, recreate, travel and engage in activities throughout the areas at issue in this complaint and will continue to do so on a regular basis. Pollution in the affected areas threatens and damages, and will continue to threaten and damage, the health and welfare of Plaintiffs' members. Pollution diminishes Plaintiffs' members' ability to enjoy the aesthetic qualities and recreational opportunities of the affected area.

15. EPA's failure to timely perform the mandatory duties described herein also adversely affects Plaintiffs, as well as their members, by depriving them of procedural protection and opportunities, as well as information that they are entitled to under the Clean Air Act. Furthermore, EPA's failure to perform the mandatory duties also creates uncertainty for Plaintiffs' members as to whether they are exposed to excess air pollution.

16. The above injuries will continue until the Court grants the relief requested herein.

17. Defendant ANDREW R. WHEELER is sued in his official capacity as the Administrator of the United States Environmental Protection Agency ("EPA"). In that role, the EPA has been charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

**STATUTORY FRAMEWORK**

18. Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring the air we breathe through the Nation is wholesome once again." H.R. Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S. Code Cong. & Admin. News 5356, 5356.

19. Commensurate with this goal, Congress authorized the Administrator of the United States Environmental Protection Agency to establish National Ambient Air Quality Standards ("NAAQS") for "criteria pollutants," which are air pollutants that "cause or contribute

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF                4

to air pollution which may reasonably be anticipated to endanger public health or welfare." *Id*. § 7408(a)(1)(A).

20. There are primary and secondary NAAQS. *Id*. § 7409(a)(1)(A). Primary NAAQS provide for "an adequate margin of safety…to protect the public health," while secondary NAAQS "protect the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutants in the ambient air." *Id*. § 7409(b)(1)-(2).

21. After the promulgation of new or revised NAAQS, the Administrator determines whether geographic areas are designated nonattainment (areas that do not meet the primary or secondary NAAQS), attainment (areas that meet the primary or secondary NAAQS), or unclassifiable (areas that cannot be classified based on available information). *Id*. § 7407(d)(1)(A).

22. States are responsible for submitting State Implementation Plans ("SIPs") and plan revisions that "provide for the implementation, maintenance, and enforcement" of any NAAQS. *Id*. § 7410(a)(1).

23. Within six months of a state submitting a SIP, the Administrator must make a completeness finding. If a determination is not made within six months of submittal, the plan submission is deemed administratively complete by operation of law. *Id*. § 7410(k)(1)(B).

24. The Administrator is required to take final action to approve, disapprove, or provide a conditional approval or disapproval within twelve months of a completeness finding. *Id*. § 7410(k)(2)-(4).

25. Within two years of the Administrator finding that a state failed to submit a required SIP or SIP revision by the required deadline for submittal, the Administrator must promulgate a Federal Implementation Plan. *Id*. § 7410(c).

**FACTUAL BACKGROUND**

**A.** **Yolo-Solano Air Quality Management District - 2006 Annual PM$_{2.5}$ Standard**

26. On May 16, 2008, EPA issued a final rule establishing the requirements for the 2006 PM$_{2.5}$ NAAQS New Source Review permitting rules. 73 Fed. Reg. 28,321 (May 16, 2008).

27. The rule requires states to submit SIP revisions that integrate the new source

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF                5

review requirements for nonattainment areas by December 31, 2014. *See* 81 Fed. Reg. 36,803 (Jun. 8, 2016); 79 Fed. Reg. 31,566 (Jun. 2, 2014).

28. On June 8, 2016, EPA made a finding that California failed to submit new source review SIP revisions for the Yolo-Solano Air Quality Management District. *See* 81 Fed. Reg. 36,803 (Jun. 8, 2016)

29. EPA's finding became effective on July 8, 2016. This initiated a two-year deadline for EPA to promulgate a new source review Federal Implementation Plan ("FIP") for the Yolo-Solano Air Quality Management District. *Id*.

30. Pursuant to 42 U.S.C. § 7410(c), EPA was required to promulgate a FIP no later than July 9, 2018.

31. To date, EPA has failed to promulgate a new source review FIP for the Yolo-Solano Air Quality Management District.

B. <u>Plumas County, California - 2012 Annual $PM_{2.5}$ Standard</u>

32. On January 15, 2013, EPA published a final rule establishing the 2012 $PM_{2.5}$ NAAQS. 78 Fed. Reg. 3,086 (Jan. 15, 2013).

33. Under the 2012 $PM_{2.5}$ NAAQS, the Portola area of Plumas County, California is designated "moderate" nonattainment. The designation required the Northern Sierra Air Quality Management District to submit a SIP, demonstrating how the Portola area will attain the 2012 $PM_{2.5}$ NAAQS. 83 Fed. Reg. 64,774, 64,775 (Dec. 18, 2018).

34. On February 28, 2017, California submitted the Portola Fine Particulate Matter $PM_{2.5}$ Attainment Plan ("Portola Plan"), on behalf of the Northern Sierra Air Quality Management District.

35. The Portola Plan "became complete by operation of law on August 28, 2017." 83 Fed. Reg. 64,774, 64,776 (Dec. 18, 2018).

36. In its proposed rule for the Portola Plan, EPA declined to take "any action at this time on the contingency measures in the Portola Plan." 83 Fed. Reg. 64,774 (Dec. 18, 2018)

37. On March 25, 2019, EPA issued a final rule on the Portola Plan to approve all but the Portola Plan's contingency measures. 84 Fed. Reg. 11,208 (Mar. 29, 2019).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF                 6

38. EPA has a mandatory duty to take final action on SIP submittals within twelve months of those SIP submittals becoming administratively complete. 42 U.S.C. § 7410(k)(2)-(4). EPA was required to take final action either approving or disapproving the contingency measures of the Portola Plan by August 28, 2018.

39. To date, EPA has failed to take final action on the contingency measures for the Portola Plan.

C.     **Phoenix-Mesa, Arizona - 2008 8-Hour Ozone NAAQS**

40. EPA finalized the 2008 ozone NAAQS on March 27, 2008. 73 Fed. Reg. 16,436 (Mar. 27, 2008). EPA subsequently published the SIP requirements for implementing the 2008 NAAQs on March 6, 2015. 80 Fed. Reg. 12, 264 (Mar. 6, 2015).

41. Under the revised standards, the Phoenix-Mesa region of Arizona was designated as "moderate" nonattainment. *See* 77 Fed. Reg. 30,160 (May 21, 2012); *see also* 77 Fed. Reg. 30,0088, 30,0096-7 (May 21, 2012). The classification required the state to submit a nonattainment SIP to attain the new 2008 ozone NAAQS. 80 Fed. Reg. 12, 264 (Mar. 6, 2015).

42. EPA has a mandatory duty to take final action on SIP submittals within twelve months of those SIP submittals becoming administratively complete. 42 U.S.C. § 7410(k)(2)-(4).

43. EPA is in violation of this mandatory duty for the Phoenix-Mesa, Arizona nonattainment areas for the SIP elements listed in Table 1 below.

**TABLE 1**

| Element | SIP Requirement | Submittal Date | Completion Date (no later than) | Final Action Due Date |
|---|---|---|---|---|
| 1 | Contingency Measures Volatile Organic Compounds ("VOC") and Nitrogen Oxides ("NOx") | 12/19/2016 | 06/19/2017 | 6/19/2018 |
| 2 | Reasonable Further Progress ("RFP") VOC and NOx - Moderate | 12/19/2016 | 6/19/2017 | 6/19/2018 |
| 3 | Ozone Attainment Demonstration | 12/19/2016 | 6/19/2017 | 6/19/2018 |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF                 7

| | | | | |
|---|---|---|---|---|
| 4 | Reasonable Available Control Technology ("RACT") Non-Control Technology Guidelines ("CTG") VOC for Major Sources | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 5 | RACT NOx for Major Sources | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 6 | RACT VOC CTG Aerospace | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 7 | RACT VOC CTG Auto and Light-Duty Truck Assembly Coatings (2008) | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 8 | RACT VOC CTG Bulk Gasoline Plants | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 9 | RACT VOC CTG Equipment Leaks from Natural Gas/Gasoline Processing Plants | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 10 | RACT VOC CTG Factory Surface Coating of Flat Wood Paneling | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 11 | RACT VOC CTG Fiberglass Boat Manufacturing Materials (2008) | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 12 | RACT VOC CTG Flat Wood Paneling Coatings (2006) | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 13 | RACT VOC CTG Flexible Packaging Printing Materials (2006) | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 14 | RACT VOC CTG Fugitive Emissions from Synthetic Organic Chemical Polymer and Resin Manufacturing Equipment | 6/22/2017 | 12/22/2017 | 12/22/2018 |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF                              8

| | | | | |
|---|---|---|---|---|
| 15 | RACT VOC CTG Graphic Arts - Rotogravure and Flexography | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 16 | RACT VOC CTG Industrial Cleaning Solvents (2006) | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 17 | RACT VOC CTG Large Appliance Coatings (2007) | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 18 | RACT VOC CTG Large Petroleum Dry Cleaners | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 19 | RACT VOC CTG Leaks from Gasoline Tank Trucks and Vapor Collection Systems | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 20 | RACT VOC CTG Leaks from Petroleum Refinery Equipment | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 21 | RACT VOC CTG Lithographic Printing Materials and Letterpress Printing Materials (2006) | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 22 | RACT VOC CTG Manufacture of High-Density Polyethylene, Polypropylene, and Polystyrene Resins | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 23 | RACT VOC CTG Manufacture of Pneumatic Rubber Tires | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 24 | RACT VOC CTG Manufacture of Synthesized Pharmaceutical Products | 6/22/2017 | 12/22/2017 | 12/22/2018 |

| | | | | |
|---|---|---|---|---|
| 25 | RACT VOC CTG Metal Furniture Coatings (2007) | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 26 | RACT VOC CTG Miscellaneous Industrial Adhesives (2008) | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 27 | RACT VOC CTG Miscellaneous Metal Products Coatings (2008) | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 28 | RACT VOC CTG Paper, Film, and Foil Coatings (2007) | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 29 | RACT VOC CTG Petroleum Liquid Storage in External Floating Roof Tanks | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 30 | RACT VOC CTG Plastic Parts Coatings (2008) | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 31 | RACT VOC CTG Refinery Vacuum Producing Systems, Wastewater Separators, and Process Unit Turnarounds | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 32 | RACT VOC CTG SOCMI Air Oxidation Processes | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 33 | RACT VOC CTG SOCMI Distillation and Reactor Processes | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 34 | RACT VOC CTG Shipbuilding/repair | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 35 | RACT VOC CTG Solvent Metal Cleaning | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 36 | RACT VOC CTG Stage I Vapor Control Systems - Gasoline Service Stations | 6/22/2017 | 12/22/2017 | 12/22/2018 |

| | | | | |
|---|---|---|---|---|
| 37 | RACT VOC CTG Storage of Petroleum Liquids in Fixed Roof Tanks | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 38 | RACT VOC CTG Surface Coating for Insulation of Magnet Wire | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 39 | RACT VOC CTG Surface Coating of Automobiles and Light-Duty Trucks | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 40 | RACT VOC CTG Surface Coating of Cans | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 41 | RACT VOC CTG Surface Coating of Coils | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 42 | RACT VOC CTG Surface Coating of Fabrics | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 43 | RACT VOC CTG Surface Coating of Large Appliances | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 44 | RACT VOC CTG Surface Coating of Metal Furniture | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 45 | RACT VOC CTG Surface Coating of Miscellaneous Metal Parts and Products | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 46 | RACT VOC CTG Surface Coating of Paper | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 47 | RACT VOC CTG Tank Truck Gasoline Loading Terminals | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 48 | RACT VOC CTG Use of Cutback Asphalt | 6/22/2017 | 12/22/2017 | 12/22/2018 |
| 49 | RACT VOC CTG Wood Furniture | 6/22/2017 | 12/22/2017 | 12/22/2018 |

44. To date, EPA has not taken final action on the SIP elements listed in Table 1.

**CLAIMS FOR RELIEF**

**FIRST CLAIM**

**(Failure to take promulgate a new source review FIP for Yolo-Solano Air Quality Management District)**

45. Plaintiffs incorporate by reference all paragraphs listed above.

46. It has been more than two years since EPA made a finding of California's failure to submit a SIP on behalf of the Yolo-Solano Air Quality Management District to implement the nonattainment new source review element for the 2006 $PM_{2.5}$ NAAQs.

47. EPA has not promulgated a FIP to address this nonattainment new source review element.

48. Accordingly, EPA is in violation of its mandatory duty under 42 U.S.C. § 7410(c)(1) with regard to this element.

**SECOND CLAIM**

**(Failure to take final action on the contingency measures for the Portola Plan)**

49. Plaintiffs incorporate by reference all paragraphs listed above.

50. EPA has a mandatory duty to take final action, pursuant to 42 U.S.C. § 7410(k)(2)-(4), on the contingency measure provisions in the Portola Plan for Plumas County, California.

51. It has been more than 12 months since the Portola Plan contingency measures for the 2012 $PM_{2.5}$ NAAQS were deemed administratively complete.

52. EPA has not taken final action on the Portola Plan contingency measures for the 2012 $PM_{2.5}$ NAAQS

53. Thus, EPA is in violation of its mandatory duty under 42 U.S.C. § 7410(k)(2)-(4).

**THIRD CLAIM**

**(Failure to take final action on the 2008 8-hour ozone SIP submittals for Phoenix-Mesa, Arizona)**

54. Plaintiffs incorporate by reference all paragraphs listed above.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF                                              12

55. EPA has a mandatory duty to take final action, pursuant to 42 U.S.C. § 7410(k)(2)-(4), on the NAAQs nonattainment SIP elements listed in Table 1 for the Phoenix-Mesa region by the dates listed in Table 1.

56. It has been more than 12 months since the 2008 ozone NAAQS SIP elements listed in Table 1 were deemed administratively complete.

57. EPA has not taken final action on the 2008 ozone NAAQS SIP elements listed in Table 1.

58. Thus, EPA is in violation of its mandatory duty under 42 U.S.C. § 7410(k)(2)-(4).

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court:

59. Declare that the Administrator is in violation of the Clean Air Act with regard to his nondiscretionary duty to perform each mandatory duty listed above;

60. Issue a mandatory injunction requiring the Administrator to perform his mandatory duties by certain dates;

61. Retain jurisdiction of this matter for purposes of enforcing and effectuating the Court's order;

62. Grant Plaintiffs their reasonable costs of litigation, including attorneys' and expert fees; and

63. Grant such other relief as the Court deems just and proper.

///
///
///
///
///
///
///
///
///

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF                         13

1  Dated: May 22, 2019

Respectfully submitted,

*/s/ Jonathan Evans*
JONATHAN EVANS (Cal. Bar # 247376)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Tel: (510) 844-7118
Email: jevans@biologicaldiversity.org

*/s/ Omonigho Oiyemhonlan*
OMONIGHO OIYEMHONLAN(student appearing under court-approved supervision)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Tel: (510) 844-7154
Email: ooiyemhonlan@biologicaldiversity.org